JOHN VANHOOSER v. THE STATE.

No. 4039. Decided October 28, 1908.

**1.—Assault—Charge of Court—Defense of Another.**

Where upon trial for assault the defendant's testimony suggested that there was no conspiracy or acting together on the part of the defendant and his son, and that all defendant did was to go in a peaceable manner to prosecutor's house after some household effects; that defendant's son started the difficulty with prosecutor, and that all defendant did was to take away the knife from prosecutor who was attempting to cut defendant's son, defendant was guilty of no offense, under defendant's testimony, and the court should have so charged the jury.

**2.—Same—Evidence—Impeaching Testimony.**

Upon trial for assault there was no error to impeach the testimony of defendant's son by showing that he had made contrary statements to those to which he testified upon trial, and showing that there had been a previous understanding of an unlawful character between himself and the defendant.

**3.—Same—Evidence—Res Gestae.**

Upon trial of assault, where the State's theory was that defendant and his son were acting together in an assault upon the prosecutor, and that the difficulty was one continued fight, there was no error to permit the State to show that

the son assaulted prosecutor, ran him out of his house and chased him over the fence.

#### 4.—Same—Evidence—Res Gestae.

Where upon trial for assault, the theory of the State was that the defendant and his son were acting together in the assault, there was no error in permitting the State to prove threatening declarations of the son against the prosecutor made just before the assault.

#### 5.—Same—Evidence—Declarations of Defendant.

Where upon trial of assault the theory of the prosecution was that defendant and his son acted together, it was error to admit in evidence insulting declarations of the defendant to the wife of prosecutor after the difficulty had ended.

#### 6.—Same—Evidence—Res Gestae.

Where upon trial of assault where the theory of the State was that the defendant and his son were acting together, and the evidence showed a general row between the defendant and his son on one side, and prosecutor and his wife on the other, testimony that during the fight between defendant's son and prosecutor defendant hit the wife of prosecutor, was admissible.

#### 7.—Same—Evidence—Threats.

Upon trial of assault, threats by defendant against prosecutor to the effect that he would kill him made prior to the difficulty were admissible in evidence.

#### 8.—Same—Evidence.

Upon trial for assault testimony as to an assault by defendant upon the wife of prosecutor after the difficulty between defendant's son and prosecutor had ended, and not contemporaneous with the assault on prosecutor, was inadmissible.

#### 9.—Same—Evidence—Irrelevant Testimony.

Upon trial of assault testimony that defendant and his son some times swore was irrelevant and inadmissible.

Appeal from the County Court of Jack. Tried below before the Hon. Sil Stark.

Appeal from a conviction of an assault; penalty, a fine of $25. The opinion states the case.

*Nicholson & Fitzgerald,* for appellant.—On question of impeaching defendant's witness: Williams v. State, 24 Texas Crim. App., 637; Lankster v. State, 72 S. W. Rep., 388; Cogdell v. State, 43 Texas Crim. Rep., 178; 63 S. W. Rep., 645; Johnson v. State, 27 Texas Crim. App., 163. On question of admitting testimony as to other offenses: Willis v. State, 75 S. W. Rep., 790. On question of admitting declarations of defendant's son: Patrick v. State, 45 Texas Crim. Rep., 587; 78 S. W. Rep., 947; Cook v. State, 76 S. W. Rep., 463; Woodward v. State, 90 S. W. Rep., 90; Chambers v. State, 46 Texas Crim. Rep., 61; 79 S. W. Rep., 572; Freeman v. State, 46 Texas Crim. Rep., 318; 81 S. W. Rep., 953. Upon question of admitting testimony as to defendant's acts and declarations after the difficulty had ended: Owens v. State, 46 Texas Crim. Rep., 14; 79 S. W. Rep., 575; Clifton v. State, 46 Texas Crim. Rep., 18; 79 S. W. Rep., 824; Simpson v. State, 85 S. W. Rep., 16. On question of refusing defendant's charge: Black v. State, 38 Texas Crim. Rep.,

58; 41 S. W. Rep., 606; Vann v. State, 43 Texas Crim. Rep., 244; 64 S. W. Rep., 243; Wenzel v. State, 90 S. W. Rep., 28; Reese v. State, 98 S. W. Rep., 842; Kees v. State, 44 Texas Crim. Rep., 543; 72 S. W. Rep., 855.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of continuing difficulty: Samuels v. State, 25 Texas Crim. App., 538.

BROOKS, JUDGE.—Appellant was convicted of an assault upon Jess Calihan and his punishment assessed at a fine of $25.

Jess Calihan was renting land from appellant. Appellant became dissatisfied with his tenancy and intended to make an effort through the courts to dispossess Calihan of the place so rented. Prior to doing so, however, appellant, in company with his wife and one Jap Hill went to Calihan's house with a wagon load of household effects with a buggy trailing to the wagon. Appellant walked to the edge of the porch of the house occupied by Calihan and asked Calihan if the door to the room which contained his things was locked and he told him it was. Witness further testifies: "He then asked me to open it as he wished to get some things out of the room. I got up and went into the house and got the key, went through the room and opened the door. When I opened the door defendant came into the house and then I saw Vester Vanhooser come into the house and as he reached the door he remarked to me, 'Calihan, they tell me you are a bad man.' I said 'No, I don't fess to be a bad man.' Vester Vanhooser then grabbed my shirt collar, and tore my shirt. I told him that I did not want any trouble and begged him not to bother me; but he kept on fighting me and said it makes no difference, 'they tell me you are a bad man and I am a bad man, too.' About this time the defendant run in and took my knife out of my pocket. My wife had hold of defendant and Vester Vanhooser had hold of my arms holding me with his arms around my shoulders. I was standing by the side of the door facing that leads into the room in which me and my wife had our bed and when defendant got my knife he turned me loose, and my wife grabbed hold of Vester Vanhooser and we scuffled until we went into our room and fell across the bed. Vester Vanhooser was on top of me and my wife had hold of him trying to get him loose from me, and while we were on the bed in this shape, Vester called for some one to take the woman away, saying that he would fix the bad man. I was begging all the time for them not to hurt me. Defendant started to pull off my wife, but Jap Hill stopped him and told him to stand back. Finally we scuffled to the edge of the bed, and Jap Hill caught hold of me and pulled me up and away from Vester Vanhooser, and I told Jap Hill to let me go. He asked me if I would run if he would let me go, and I said I would, and he turned me

loose, and I run out of the house and Jap Hill and Vester Vanhooser went out after me, Vester Vanhooser trying to catch me. I ran out and jumped over the fence and went off to my father-in-law's house." The above is the State's case. The defense's evidence shows that appellant took the knife out of the prosecuting witness' hand. In addition to the above testimony for the State the evidence clearly suggests that the father and son were acting together in the assault upon Calihan. Whether this be true or not is a question of fact for the jury. The defense denies this.

The record does not contain any general charge of the court. We, therefore, presume that if any charge was given by the court it was a verbal one. Appellant asked the court to instruct the jury as follows: "You are instructed that if you find and believe from the evidence in this case that John Vanhooser upon or about 25th day of March, 1906, at his place in Jack County, Texas, saw Jess Calihan draw a knife from his pocket and attempted to use the same on Vester Vanhooser, the son of defendant, and you further find that defendant did not go on said premises for the purpose of raising a difficulty and knew nothing of any intention on the part of Vester Vanhooser to unlawfully attack Jess Calihan, and you further find and believe that all the defendant, John Vanhooser, did on said date was to take away from Jess Calihan said knife, you will find defendant not guilty."

The defense's testimony suggests that there was no conspiracy or acting together on the part of father and son whatever, and that all appellant did was to go, in a peaceable manner, after some household effects and the son started the difficulty. If this is true and all appellant did was to take the knife away from the party who was attempting to cut his son, certainly he would not be guilty of any offense and the court should have so charged.

Bill of exceptions No. 1 shows that the State propounded the question to, and Vester Vanhooser answered, as follows: That he did not swear that he turned around and went back to the premises where the fight between himself and Jess Calihan occurred, and did not go on to feed his steers; that the reason he went back was because he anticipated some trouble.

Bill No. 2 shows that the State proved by G. R. Moore that Vester Vanhooser did swear in the justice court that he met the prosecuting witness, Jess Calihan, and his wife, between the John Vanhooser place and Baker's; that he turned and went back because he was expecting some trouble. This testimony as embodied in the two bills was admissible. If Vester Vanhooser was anticipating trouble it is a circumstance to indicate that there had been a previous understanding and agreement of unlawful character between himself and father, and it is permissible to impeach his testimony indicating that he did not so understand by proving contrary statements made in the justice court.

Bill No. 5 shows the State was permitted to prove by Jess Calihan that on the occasion in question Vester Vanhooser assaulted him and ran him out of his house and chased him over the fence. This testimony was part of the res gestae; it was one continued fight. Of course, appellant, if not participating in same, under a proper charge of the court would not be convicted by the jury, but the State's theory was and is that he and his son were acting together. If they were he would be equally guilty with his son.

Bill No. 6 shows that the State proved by Mrs. Vina Calihan that just prior to the difficulty, Vester Vanhooser came in at the door and remarked to her husband: "Calihan, I hear that you are a bad man, and immediately assaulted him by taking hold of his shirt collar," and further, "It makes no difference, by God they say you are a bad man." This testimony was also part of the res gestae.

Bill No. 7 shows the State proved by Vina Calihan that after Jess Calihan and Vester Vanhooser had left the house and place, that the defendant, John Vanhooser, popped his fist in her face and said, "What are you acting a God damn fool about this place for?" Appellant objected for the reason that said testimony was not relevant and material to the State's charge in this case and no part of the res gestae. Certainly if the difficulty had ended, and appellant used the insulting language to the prosecuting witness' wife, as contained in this bill, it would not be a part of the res gestae and ought not to be admitted.

Bill No. 8 shows that Vina Calihan was permitted to testify that during the fight between her husband and Vester Vanhooser that the defendant hit her in her side. Certainly if defendant hit Calihan's wife in the side during the fight between Vester Vanhooser and the prosecuting witness, Jess Calihan, this testimony would be admissible as part of the res gestae, since the evidence shows they were all mixed up in a general row.

Bill No. 10 shows that the State was permitted to prove by Jess Calihan that he sold his crop for less than it was worth because he was advised that defendant would kill him if he remained on the place. This testimony was admissible. Threats prior to the time a difficulty occurs are always admissible.

Bill No. 11 shows that Vina Calihan, while on the stand testified that after Jess Calihan and Vester Vanhooser had run away from the place that John Vanhooser, appellant, caught hold of her and shook her until her dress fell off of her on the floor, and that she went away from the place without any dress on. As stated above, if the difficulty between appellant's son and Jess Calihan had ended and appellant used any violence to the person of Calihan's wife, this testimony would not be admissible in the trial of the case for assault on Calihan prior to said time. Of course, if it occurred cotemporaneous with the assault on Calihan, it would be admissible.

Bill No. 12 shows the State proved by Vester Vanhooser that he

and his father sometimes swear. We see no relevancy of this testimony in the trial of the case for assaulting Calihan.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Ramsey, Judge, absent.